IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MICHALESKO, | : | Case No.:4:04cv2479 |
| | : | |
| Plaintiff | : | |
| v | : | Judge Jones |
| | : | |
| OFFICE MAX, et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

June 20, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion for Summary Judgment (doc. 35) filed by Defendant Office Max ("Office Max") on April 21, 2006.  We also have before us a Motion for Summary Judgment (doc. 37) filed by Defendant Werner Enterprises, Inc. ("Werner") on May 2, 2006.  For the reasons that follow, the Motions will be denied.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY:**

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, the Plaintiff, in our analysis of the pending Motions.

As we explained in our January 24, 2006 Order, this action arises out of a

1

slip and fall accident that occurred on December 4, 2002 when Plaintiff James Michalesko ("Plaintiff" or "Michalesko") fell while loading a trailer at the Office Max Distribution Center in Hazleton, Pennsylvania.  Plaintiff, an employee of APS Group, LLC ("APS"), a service that places individuals in temporary job positions, was loading a trailer when he allegedly slipped and fell on ice located on the floor of a trailer.

In or about August 2002, Plaintiff was hired by APS and assigned to Office Max's Distribution Center in Hazelton, Pennsylvania pursuant to a request by Office Max.  On or about April 16, 2002, Office Max entered into an Agreement entitled "Outside Service Provider Agreement" ("the Agreement") with APS. Pursuant to the Agreement, APS as the "Contractor" was to provide to Office Max "one or more contract employees as requested by Office Max from time to time." (Rec. Doc. 36, Ex. B at 1).  The Agreement makes clear that "Contractor shall instruct and require its employees and agents assigned to perform services for Office Max to abide by all rules and policies established by Office Max regarding appropriate conduct and behavior, including, without limitation, Office Max's anti-discrimination and anti-harassment policies." Id.  Moreover, the "Independent Contractor" provision of the Agreement states that services provided by Contractor (APS) "shall be performed as an independent contractor, and not as an agent or

employee of Office Max." Id.  In that regard, APS is responsible for the supervision, control, compensation, benefits, withholdings, health, and safety of its employees and agents.  Id.

On or about October 14, 2004, Plaintiff filed an action in the Court of Common Pleas of Luzerne County, Pennsylvania alleging personal injuries and damages as a result of the December 4, 2002 slip and fall incident.  Plaintiff alleged that Defendants Office Max and Werner were negligent for failing to maintain the trailer and allowing the existence of a dangerous condition in the trailer.  This matter was removed to the United States District Court for the Middle District of Pennsylvania on November 12, 2004.

In the complaint, Plaintiff asserts that his Office Max supervisor instructed him to use oil-dry on an icy area after he informed Office Max about this condition.  As the Office Max Distribution Center did not have a sufficient quantity of oil-dry, Plaintiff placed what he had on the trailer.  While removing a pallet on December 4, 2002, Plaintiff was allegedly caused to slip and fall, landing on his back.  Following the December 4, 2002 accident, Plaintiff submitted claim petitions for worker's compensation benefits against both APS and Office Max. On February 5, 2004, the parties to Plaintiff's worker's compensation petitions stipulated that APS, and not Office Max, was the proper employer.  The stipulation

dismissed Office Max from the case.  Workers' Compensation Judge Joseph B. Sebastianelli, relying upon said stipulation, ordered APS, not Office Max, to provide Plaintiff with worker's compensation benefits.

Plaintiff's action against Defendants Office Max and Werner alleges personal injuries and damages, including but not limited to cervical and lumbar herniations and related past and future wage loss, as a result of the December 4, 2002 accident.

On April 21, 2006 and May 2, 2006 respectively, Defendants Office Max and Werner filed the instant Motions for Summary Judgment, which have been briefed by the parties.  Discovery concluded on April 21, 2006.  The Motions are accordingly ripe for disposition.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could

4

draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true."

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.

1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to

materiality, the substantive law will identify which facts are material." Id. at 248.

A dispute is considered to be genuine only if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Id.

**DISCUSSION:**

Office Max argues in its Motion for Summary Judgment that it is immune

from suit because it was Plaintiff's "statutory employer" under the Pennsylvania

Workers' Compensation Act ("the Act"), 77 P.S. § 1 *et seq*. Office Max asserts

that the Act is the exclusive remedy for Plaintiff concerning the December 4, 2002

accident. Moreover, Office Max states that although Plaintiff claims he was

initially employed by APS, pursuant to the Borrowed Servant Doctrine, Plaintiff

was the "borrowed servant" of Office Max for purposes of the Act. Second, Office

Max maintains that the Act bars Defendant Werner's cross-claims against Office

6

Max as liability under the Act is exclusive.  Finally, Office Max maintains that collateral estoppel does not prevent it from asserting that it was Plaintiff's statutory employer on the date of the accident as the findings that a lending employer is responsible for payment of worker's compensation benefits and that a borrowing employer is immune from suit as a statutory employer are not mutually exclusive.

In response to Defendant Office Max's Motion, Werner argues that Office Max is collaterally estopped from asserting that it was Plaintiff's employer on the date of the accident.  "This is the *same* accident which was the subject of previous litigation pursuant to the Worker's Compensation Act.  Under Pennsylvania law, Office Max is collaterally estopped from relitigating the same factual and legal issues which were previously adjudicated by a worker's compensation judge." (Def. Werner Br. Opp. Def. Office Max's Mot. Summ. J. at 3)(emphasis in original).  Werner argues that as Office Max stipulated that it was not Plaintiff's employer before the worker's compensation judge and therefore avoided responsibility for payment of worker's compensation benefits, it may not now assert that it was Plaintiff's employer so that it may avoid responsibility as a third party tortfeasor for Plaintiff's alleged injuries.  Defendant Werner alternatively argues that there is a genuine issue of fact as to whether APS or Office Max was Plaintiff's employer on the date of the accident.  Werner maintains that in addition

to failing to meet the requirements of a borrowing employer, Office Max was not the statutory employer of Plaintiff.

Werner asserts in its Motion for Summary Judgment that Plaintiff's cause of action for negligence should be dismissed because Werner breached no duty of care owed to Plaintiff.  Alternatively, Werner contends that Plaintiff's cause of action for negligence should be dismissed because its actions were not the proximate cause of the accident.  "Clearly, the established procedure under the Office Max policy was to notify Werner of an unsafe or unsatisfactory condition with the trailer, therefore it is 'highly extraordinary' that Office Max and plaintiff chose to ignore this policy, attempt to correct the alleged icy condition of the trailer floor themselves and continue to traverse the trailer for hours loading the trailer with product."  (Def. Werner Br. Supp. Mot. Summ. J. at 10).  In response to Werner's Motion, Office Max asserts that Werner cannot rely on deposition testimony to establish the non-existence of a material fact to support judgment as a matter of law and that there are genuine issues of material fact as to Werner's negligence.

We initially turn to Defendant Office Max's Motion for Summary Judgment in which Office Max argues that it is immune from suit because it was Plaintiff's statutory employer under the Pennsylvania Workers' Compensation Act.  We will

first determine whether Office Max is collaterally estopped from asserting that it

was Plaintiff's employer on the date of the accident at issue, as asserted by Werner.

As accurately submitted by Werner, collateral estoppel "operates to prevent a

question of law or an issue of fact which has once been litigated and adjudicated

finally in a court of competent jurisdiction from being relitigated in a subsequent

suit." Capobianchi v. Bic. Corp., 666 A.2d 344, 348 (Pa. Super. Ct. 1995)(citing

Day v. Volkswagenwerk Aktiengesellschaft, 464 A.2d 1313, 1318 (Pa. Super. Ct.

1983)).  As the Third Circuit Court of Appeals has instructed, collateral estoppel is

appropriate where:

> (1)    an issue decided in a prior action is identical to one presented in
> a later action;
>
> (2)    the prior action resulted in a final judgment on the merits;
>
> (3)    the party against whom collateral estoppel is asserted was a
> party to the prior action, or is in privity with a party to the prior
> action; and
>
> (4)    the Party against whom collateral estoppel is asserted had a full
> and fair opportunity to litigate the issue in a prior action.

Jones v. United Parcel Service, 214 F.3d 402, 406 (3d Cir. 2000)(citing Rue v. K-

Mart Corp., 713 A.2d 82, 84 (Pa. 1998)).  Moreover, as the Pennsylvania Superior

Court explained in Day, "the doctrine of collateral estoppel is a broader concept

than res judicata.  It operates to prevent a question of law or an issue of fact which

has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." <u>Day</u>, 464 A.2d at 1318. "Parties to a subsequent action need not be the same as those in the prior suit in order to raise the question of collateral estoppel.  Collateral estoppel may be used as either 'a sword or a shield' by a stronger to the [prior] action, as long as the party against whom the defense is invoked is the same." <u>Id.</u> at 1319.

In addition, the purpose of the Act is to provide compensation to an employee commensurate with the damages resulting from an accidental injury.  In exchange, the employee relinquishes his or her right of action against the employer.  Whether an employer/employee relationship exists is one of law, but it is based upon findings of fact.  <u>W.W. Friedline Trucking v. W.C.A.B.</u>, 616 A.2d 728, 729 (Pa. Commw. Ct. 1992), petition for allowance of appeal denied, 621 A.2d 584 (Pa. 1993).  As part of any claimant's burden of establishing a right to worker's compensation benefits, he must prove the existence of an employer-employee relationship at the time of the injury.  <u>Whiteside v. W.C.A.B.</u>, 650 A.2d 1202, 1205-7 (Pa. Commw. Ct. 1994), petition for allowance of appeal denied, 664 A.2d 978 (Pa. 1995).

As previously noted, on or around January 2003, Plaintiff filed a worker's compensation claim against Office Max and APS for the injuries and damages he

10

sustained as a result of the December 4, 2002 accident that occurred while working

as a truck loader at the Office Max Distribution Facility in Hazleton, Pennsylvania.

As accurately submitted by Office Max, the Agreement entered into between

Office Max and APS clearly contracted that APS, rather than Office Max, would

be responsible for worker's compensation benefits.  Specifically, in that regard,

relevant portions of Section 3, entitled "Independent Contractor," reads as follows:

"Contractor [APS] will be responsible for the supervision, control, compensation,

benefits, withholdings, health and safety of its employees and agents.  The parties

also expressly acknowledge and agree that with respect to any fees paid by Office

Max to Contractor [APS] under this Agreement, Office Max shall not be

responsible or liable for any withholding taxes or contributions to state worker's

compensation, unemployment or other funds or programs."  (Rec. Doc. 36, Ex. B

at 1).  As a result of such provision in the Agreement between Office Max and

APS, the parties to the worker's compensation proceeding entered into a stipulation

at the hearing before Judge Sebastianelli that APS, not Office Max, was Plaintiff's

employer for the purpose of compensation benefits.   The parties' stipulation was

admitted into evidence as a joint exhibit, whereby it was agreed that the correct

employer in the worker's compensation matter was not Office Max, but rather,

APS.  (Rec. Doc. 51, Ex. A). We are in agreement with Office Max that the

stipulation denoting APS as the employer rather than Office Max for worker's

compensation benefits, was not the result of litigation dealing with who was the

statutory employer, but rather a contractual issue regarding who had agreed via the

contract between Office Max and APS to provide such benefits.  Moreover,

although Werner maintains that the stipulation was not restricted to the worker's

compensation action and suggests that the stipulation is applicable to the instant

action as well, we disagree.  Specific numerical provisions of the stipulation

admitted into evidence before Judge Sebastianelli as a joint exhibit at the worker's

compensation proceedings provide, in relevant part, as follows:

> 3.    "It is agreed and stipulated between the parties that the correct
>        Employer *in this matter* is not Office Max, but rather, APS
>        Group."
>
> 4.    "As such, it is agreed and stipulated between the parties that
>        Office Max is not the proper Defendant and should be
>        dismissed *from this matter*."

Id.  (emphasis added).  In addition, Judge Sebastianelli notes in his Findings of

Fact that all of the parties "*to this action*" entered into a stipulation on February 5,

2004 and explained in one of his Conclusions of Law the following, "As a result of

the Stipulation entered into by counsel that APS Group/Gallagher Bassett is the

correct Defendant *in this matter*, the Claim Petitions which were filed against

Office Max and Royal & Sun Alliance are rendered moot and are hereby

dismissed." Id. at 3, 6 (emphasis added).

We accordingly find that the stipulation entered into by the parties in the worker's compensation proceeding was limited to such proceeding on the basis of the clear contractual language between Office Max and APS designating APS to be responsible for worker's compensation benefits.  Moreover, the doctrine of collateral estoppel is not applicable to the case sub judice as an issue decided in the worker's compensation proceeding, Plaintiff's proper employer at the time of the accident, is not identical to one presented in this later action.  As noted, the aforereferenced stipulation was made applicable to only the worker's compensation proceeding on the basis of contractual language between Office Max and APS.[1]

We turn now to Office Max's argument that the Act is the exclusive remedy

---

[1] We note that both parties cite to the case of Virtue v. Square D. Co., 887 F. Supp. 98 (M.D. Pa. 1995), in their submissions.  Office Max cites to Virtue in support of its argument that collateral estoppel does not apply and asserts that it is not bound by the fact that APS was determined to be Plaintiff's employer for worker's compensation benefits.  We are in agreement with Werner that Virtue is factually distinguishable from the above-captioned case as in Virtue, the plaintiff was an employee of Olsten Corporation ("Olsten").  Olsten assigned the plaintiff to perform maintenance work for Square D Company ("Square D") and the plaintiff was subsequently involved in an accident resulting in personal injuries.  Id. at 99-100.  Olsten provided worker's compensation benefits pursuant to a mandate of the worker's compensation judge.  From the record presented, it does not appear that Square D was involved in the worker's compensation action or that any determination was made in the worker's compensation case as to Square D's status as an employer.  Unlike Virtue, in this case, the issue of the proper employer for worker's compensation benefits was agreed to by the parties which resulted in the above-referenced stipulation.

for Plaintiff concerning the accident of December 4, 2002.  As submitted by Office Max, in Pennsylvania, it is well-established that where an employee's injury is compensable under the Act, the compensation provided by the statute is the employee's exclusive remedy against his or her employer.  Hykes v. Hughes, 835 A.2d 382, 384 (Pa. Super. Ct. 2003).  Section 303 of the Act provides as follows:

> (a)   The liability of an employer under this action shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481(a).  Office Max therefore argues that the above-referenced exclusivity provision of the Act immunizes Office Max from suit as it was Plaintiff's statutory employer, Plaintiff was acting in the scope of his employment at the time of the accident, and Plaintiff elected to obtain benefits under the Act.

As aptly submitted by Werner, in situations such as this, where an employee is furnished by one entity to another, the Court must determine whether Plaintiff was a borrowed servant of Office Max, or whether he remained an employee of APS.  Under Pennsylvania law, there is a presumption that an employee remains an employee of the lending employer unless evidence shows that the borrowing employer assumed control over the worker's manner of performing his work.

14

Williams v. W.C.A.B., 682 A.2d 23, 27 (Pa. Commw. Ct. 1996).  "[W]hen

different inferences can reasonably be drawn from the testimony as to whether the

lender or the borrower is the controlling master at the time of the accident, or

whether both of them have the right to control, the question is one for the jury."

Lane v. Schacht, 393 A.2d 1015, 1019 (Pa. Super. Ct. 1978).

Moreover, the determination of whether an employer-employee relationship

exists is determined on a case-by-case basis.  In Mature v. Angelo, 97 A.2d 59 (Pa.

1953), the Pennsylvania Supreme Court detailed the following factors to consider:

> (1)   one who is in the general employ of one employer may be
>        transferred to the service of another in such a manner that he
>        becomes an employee of the second employer;
>
> (2)   whether or not the transferred employee becomes the employee
>        of the second employer depends on whether the first employer
>        passes to the second employer not only the right to control the
>        employee's work, but also his manner of performing it;
>
> (3)   it is enough to establish the employer-employee relationship if
>        the employer has the right to control the employee's manner of
>        performance of work, regardless of whether the right is ever
>        exercised;
>
> (4)   facts which indicate that an employee remains in the service of
>        his original employer include the original employer's right to
>        select the employee to be loaned and to discharge him at any
>        time and send another in his place, the loaned employee's
>        possession of a skill or special training required by the work for
>        the second employer, and employment at a daily or hourly rate
>        for no definite period;

(5)     the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship; and

(6)     when the facts are undisputed, the determination of who is the employee's employer is one of law, but when the facts are disputed, the determination is one of fact.

Id. at 60-62 (internal citations omitted).  In addition, and as accurately submitted by Office Max, a critical determining factor defining the special employer-employee is whether the employer borrowing the employee had the right to control the work of the employee.  "The test for determining whether a borrowing employer is an employer . . . is whether the employer controlled, or had the right to control, the borrowed employees, 'not only with regard to the work to be done but also with regard to their manner of performing it.'" English v. Lehigh County Auth., 428 A.2d 1343 (Pa. Super. Ct. 1981)(citing Venezia v. Philadelphia Elec. Co., 177 A. 25 (Pa. 1935)).  The right to control an employee, whether or not that right is exercised, is sufficient to create a special employer-employee relationship. JFC Temps v. W.C.A.B., 680 A.2d 862, 864 (Pa. 1996).

After a careful review of the record and applicable case law, we find that genuine issues of material fact exist as to whether APS or Office Max was Plaintiff's employer on the date of the accident at issue, which includes whether APS passed control of Plaintiff to Office Max and whether Office Max was the

"statutory employer" of Plaintiff, for the reasons that follow.

Office Max maintains that not only did it have the right to control Plaintiff's activities on the job site, but did in fact exercise that control.  In that regard, Office Max asserts that Plaintiff was trained and supervised by Office Max supervisors as per his testimony, that he was scheduled according to Office Max's needs, that he reported to Office Max supervisors who directed him to his assignments, and that Office Max had the discretion to request and reject any worked supplied by APS.  However, Werner counters that Teresa Kasarda ("Ms. Kasarda"), the APS supervisor located at the Office Max premises at the time of the accident, who is now employed by Office Max, testified that APS retained the authority to hire, assign, and fire Plaintiff throughout his assignment to Office Max.  Werner maintains that Office Max had no control over who APS hired, assigned, or fired and the according to the Agreement between APS and Office Max, APS was an independent contractor who was responsible for the direct supervision and control of its employees.  (Rec. Doc. 36, Ex. B).  In addition, there was no definite time period for an APS's assignment of an employee to Office Max and the APS employees were paid on an hourly basis.  Plaintiff was paid by APS, used separate time clocks from those used by Office Max employees, and continued to report to an APS supervisor who was on-site at the Office Max warehouse.  Accordingly,

17

reviewing the evidence in the light most favorable to the non-moving party,

Plaintiff, we find that genuine issues of material fact exist regarding whether APS

or Office Max was Plaintiff's employer on the date of the accident at issue, which

includes whether APS passed control of Plaintiff to Office Max and whether Office

Max was the "statutory employer" of Plaintiff.  Therefore, Defendant Office Max's

Motion for Summary Judgment is denied.

At this juncture, we will now turn to Defendant Werner's Motion for

Summary Judgment.  As noted, Defendant Werner argues that Plaintiff's cause of

action for negligence should be dismissed because it breached no duty of care

owed to Plaintiff.  As accurately presented by Werner, it is well-established that

the mere occurrence of an injury does not give rise to an inference that the

defendant was negligent and negligence is premised on the existence of a duty.

Markovich v. Bell Helicopter Textron, Inc. and Textron, Inc., 805 F. Supp. 1231,

1236 (E.D. Pa. 1992)(citing Hicks v. Unger Motor Co., 332 F. Supp. 118, 121

(E.D. Pa. 1971)); see also Orner v. Mallick, 527 A.2d 521 (Pa. 1987).  In order to

prevail on a negligence claim in Pennsylvania, the plaintiff must prove the

following elements: "(1) a duty recognized by the law, of the defendant to conform

to a standard of care; (2) a breach of that standard of care; (3) a causal connection

between the breach and the (4) injury to the plaintiff."  Markovich, 805 F. Supp. at

18

1237.  Moreover, the determination of whether a duty exists is a critical question

because there can be no negligence where there is no duty of care.  Zanine v.

Gallagher, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985).  An individual owes a duty

only if his act created a foreseeable risk that could have been mitigated at a cost not

disproportionate in light of the gravity and probability of the foreseeable harm.

Once a duty is established, the plaintiff must demonstrate that the defendant

breached that duty.  Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998).

Werner argues that it had no duty to keep the trailer floors free of ice and

that it entered into a contract with Office Max to provide tractors, trailers, and on-

site yard jockeys.  Moreover, Werner maintains that there is no evidence that it was

notified of a problem with any trailer loaded by Plaintiff on December 4, 2002, nor

is there evidence that the Office Max or APS supervisors informed Werner of any

alleged icy condition or problem with a trailer on December 4, 2002.

After a careful review of the record, as well as applicable case law, we are in

agreement with Office Max and Plaintiff that there are genuine issues of material

fact as to Werner's negligence in this case for the reasons that follow.[2]  It is

---

[2] We initially note that we disagree with Office Max's argument that Werner cannot rely on deposition testimony to establish the non-existence of a material fact to support judgment as a matter of law.  Werner accurately submits that the Third Circuit Court of Appeals has held that if there is no contradictory evidence, deposition testimony and affidavits, as well as facts testified to in a hearing may be accepted as true for summary judgment purposes without an assessment of the credibility of the witness.  Hancock Industries v. Schaeffer, 811 F.2d 225, 230-31 (3d Cir.

undisputed by the parties that the contract between Office Max and Werner specifically calls for Werner to keep its equipment in "good repair, mechanical condition and appearance." (Rec. Doc. 37, Ex. C).  Although Werner contends that the absence of contractual language specifically stating that it is responsible for keeping the trailers free of snow and/or ice conclusively indicates that it had no responsibility to inspect the trailers after they are positioned at the dock and imposes no obligation upon Werner to inspect for snow and ice, we find that viewing the evidence in the light most favorable to Plaintiff as the non-moving party reveals that genuine issues of material fact exist regarding Werner's duty of care to inspect the trailers.  As aptly submitted by Office Max, the deposition testimony of Carl Logan ("Mr. Logan") and David Mazur ("Mr. Mazur"), concerning Werner employees inspecting trailers in the course of their employment duties presents a genuine factual issue as to whether Werner had a duty to inspect the trailers which was breached and caused Plaintiff's harm in the case sub judice.  In that regard, we note that Mr. Logan, a shag driver employed by Werner, testified that Werner employees would visually inspect the trailers for damage as they were pulled into the loading dock.  Moreover, he testified that Werner employees would

---

1987).  Accordingly, we find that the parties may rely upon deposition testimony to establish the non-existence of any material fact to support judgment as a matter of law.

check the tires to ensure that they were not flat, check the trailer size to verify the lack of tears, and check the roof to inspect for tears which would allow for water to come in.  (Rec. Doc. 59, Ex. C, Logan Dep. at 13, 21).  In addition, Mr. Logan testified that there were no Office Max employees actually walking around the yard while the Werner employees were doing their work.  Accordingly, it would be the responsibility of such Werner employees to perform the requisite visual inspection.  Id. at 36.  Mr. Logan testified that it was his understanding that Werner was responsible for the yard and that it was his personal practice to inspect the inside and outside of the trailers.  Id. at 45.  Finally, Mr. Logan stated that he has observed snow or ice at the tail end of a trailer at times but never personally reported the fact that there was snow or ice in the trailer and that it should not be used.  Id. at 50-51.

The deposition testimony of Mr. Mazur, a yard jockey employed by Werner, also confirms that a genuine factual issue exists as to whether Werner had a duty to inspect the trailers.  Mr. Mazur testified that there have been occasions in which he would be called and told that water was leaking in a trailer and he would be responsible to go into the trailer and inspect it.  (Rec. Doc. 59, Ex. D, Mazur Dep. at 32).  Moreover, Mr. Mazur testified that if he saw snow or ice on the bed of a trailer, he would not place it for use against the building because it would not be

21

safe for use.  Id. at 38-39.  If he saw snow or ice, he would have to notify a person by the name of Walter, who dealt specifically with Office Max employees.  No Office Max individuals were physically present in the yard.  Id. at 39.

Accordingly, and as noted, we find that genuine issues of material fact exist regarding Werner's negligence, and specifically, Werner's duty of care to inspect the trailers, which was breached.  Werner argues that even assuming that it had some duty relating to ice on the trailer floors, which it denies, its actions were not the proximate cause of the accident.  In determining whether an act of negligence is a legal cause, the Pennsylvania Supreme Court has held that the test is whether it is a substantial factor in bringing about the injury.  Ross v. Vereb, 392 A.2d 1376, 1378-79 (1978); Miller v. Checker Yello Cab Co., 348 A.2d 128, 130 (Pa. 1975). As submitted by Werner, the Restatement (Second) of Torts, § 447 (1965) provides the criteria to be employed in ascertaining whether the actor's negligent conduct is a substantial factor.  In § 447, the liability of the first actor continues whenever:

> (a) the first actor should have realized that the second actor might so act; (b) a reasonable man would not regard the second actor's action as highly extraordinary; or (c) the second actor's conduct is a normal consequence of the situation created by the first actor and not extraordinarily negligent.

Restatement (Second) of Torts, § 447 (1965).

Although Werner places emphasis upon the fact that contrary to Office Max

policy, Werner was not notified of the alleged icy condition on the trailer floor and

that the actions of Office Max and Plaintiff were not the normal consequence

where there was an unsafe condition of a trailer, applying the above criteria, we

find that viewing the evidence in the light most favorable to Plaintiff, genuine

issues of material fact exist concerning whether Werner's actions were the

proximate cause of the accident.  Dismissal of Werner at this juncture would be

entirely improvident and premature.  As we have determined that genuine issues of

material fact exist as to Werner's negligence, Werner's Motion for Summary

Judgment is denied.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    Defendant Office Max's Motion for Summary Judgment (doc. 35) is

DENIED.

2.    Defendant Werner's Motion for Summary Judgment (doc. 37) is

DENIED.


<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge